IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NETJETS AVIATION, INC., et al.,

      **Plaintiffs,**

    **v.**                                  **Civil Action 2:20-cv-4464**
                                          **Magistrate Judge Kimberly A. Jolson**

U.S. DEPARTMENT OF
AGRICULTURE, et al.,

      **Defendants.**

## OPINION AND ORDER

This matter, in which the parties have consented to the jurisdiction of the Magistrate Judge,

is before the Court on Defendant U.S. Department of Treasury's ("DOT") Motion to Dismiss for

Lack of Jurisdiction, Motion to Dismiss for Failure to State a Claim, and Motion to Sever (Doc.

84).  For the reasons that follow, the Motion is **DENIED**.

## I.    BACKGROUND

Elsewhere, the Court has explained this case in detail.  (Doc. 80 at 1–2).  Relevant here,

Plaintiff Executive Jet Management, Inc. ("EJM") owes U.S. Department of Agriculture

("USDA") unpaid fees, interest, and statutory penalties.  (Doc. 81 at ¶ 44).  USDA forwarded this

claim against EJM to DOT for collection.  (Doc. 81 at ¶ 55).  DOT then billed EJM for the full

amount of the underlying USDA debt, plus an additional charge for DOT's "costs for collection."

(*Id.*).  "This additional charge is a 'cross-servicing fee,' which DOT's Fiscal Service's Debt

Management Service ('DMS') charges to debt-referring agencies."  (Doc. 80 at 2 (citing Doc. 71

at 4)).  Each fiscal year, DOT sets the cross-servicing fee, which the Court refers to as "the Fee."

DOT says that it is based upon the collection costs necessary to recover debts.  (*Id.* (citing Doc. 71

at 4)).  EJM challenges DOT's assessment of the Fee to its underlying debt.  (*See* Doc. 81, ¶ 104–

35). Specifically, EJM says the Fee "is a rule that is arbitrary and capricious and is an abuse of agency discretion; that was adopted without observance of required procedures; and that lacked substantial evidence." (Doc. 81, ¶ 124).

DOT filed a Motion to Dismiss the First Amended Complaint on February 10, 2021. (Doc. 37). After the parties briefed the matter, the Court sought additional information about DOT's collection process. (Doc. 63). While briefing was underway, Plaintiff filed a Motion to Amend the Complaint (Doc. 74), seeking to file a second amended complaint. In an August 2021 Opinion and Order, the Court denied DOT's Motion to Dismiss (Doc. 37), and granted EJM leave to file the Second Amended Complaint (Doc. 81). (Doc. 80).

DOT now challenges the Second Amended Complaint in multiple ways. (Doc. 84). First, DOT asks the Court to vacate its prior opinion (Doc. 80). Traveling familiar ground, DOT argues: it is immune; there is no cognizable claim under the Declaratory Judgment Act; and it is not a proper party. Next, making new arguments, DOT says EJM's claims lack standing and its claims are not ripe; and even if they are, EJM cannot win because the Fee is an interpretive rule not subject to notice and comment rulemaking requirements. Alternatively, and finally, DOT argues that claims against it should wait until the underlying claims against USDA and Customs and Border Patrol ("CBP") are resolved. The parties have fully briefed the issues. (Docs. 84, 87, 90).

## II.    DISCUSSION

### A.    Motion to Vacate

The Court previously held that the Administrative Procedures Act ("APA") waived DOT's sovereign immunity and subject-matter jurisdiction exists in this case. (Doc. 80 at 5). It also held that DOT is a proper party. (*Id.* at 18). DOT now asks the Court, in its discretion, to vacate its prior Opinion and Order. (Doc. 84 at 12–13). The Court declines to do so.

2

Federal Rule of Civil Procedure 54(b) states:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54. Thus, "[d]istrict courts possess the authority and discretion to reconsider and modify interlocutory judgments any time before final judgment." *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 952 (6th Cir. 2004). And "yet that does not make all pretrial orders inherently tentative" because "[m]any other orders . . . are made with the expectation that they will be the final word on the subject addressed." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 n.14 (1983). When evaluating whether there is sufficient justification to reconsider an interlocutory order, district courts consider whether there has been "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Luna v. Bell*, 887 F.3d 290, 297 (6th Cir. 2018). In exercising this discretion, the Court is "guided by concerns of finality and judicial economy on the one hand, balanced against the court's ultimate responsibility to reach a correct judgment, on the other." *Stryker Corp v. TIG Ins. Co.*, No. 1:05-CV-51, 2014 WL 198678, at *2 (W.D. Mich. Jan. 15, 2014), *aff'd sub nom. Stryker Corp. v. TIG Ins. Co.*, No. 1:05-CV-51, 2014 WL 1328151 (W.D. Mich. Apr. 1, 2014).

Just five months ago, the Court considered and rejected DOT's arguments. Specifically, the Court held that the APA waived DOT's sovereign immunity for purposes of this lawsuit (Doc. 80 at 5–17), and because DOT assessed the Fee, it was the proper party to be sued (*id.* at 18). Since that ruling, the law has not changed; no new evidence has been presented; and there is no concern that a manifest injustice has occurred. Guided by concerns of finality and efficiency—and

confidence that the previous ruling was correct—the Court declines to vacate the prior Opinion and Order (Doc. 80).

### B. Jurisdiction

The Court next turns to DOT's new jurisdictional arguments. The challenge has two parts. First, DOT questions whether EJM has standing to sue. And, second, DOT argues that EJM's claims are not yet ripe. (Doc. 84 at 14–20).

### 1. Standing

Standing, derived from Article III of the Constitution, requires that "a litigant 'prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision.'" *Carney v. Adams*, 141 S. Ct. 493, 498 (2020) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Thus, when broken down, standing has three elements: injury-in-fact, traceability, and redressability.

#### a. Injury-in-fact

To demonstrate an injury-in-fact, a plaintiff must show that "he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983) (internal quotation marks omitted). The injury must be "over and above the abstract generalized grievance suffered by all citizens . . . ." *Carney*, 141 S. Ct. at 499. Time and again, courts have held that economic harm satisfies the requirement. *See, e.g., Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"); *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017) ("Economic harm to a business clearly constitutes an injury-in-fact.").

4

Here, EJM experienced an injury-in-fact because it suffered an economic harm:  DOT billed EJM for the Fee.  Arguing otherwise, DOT says that the Fee is too speculative to be a concrete injury because the Fee might go away if EJM wins its underlying challenge against USDA.  (Doc. 84 at 16 ("There is . . . no guarantee that EJM will *ever* pay the costs related to Treasury fees in full because those fees are charged to and collected from federal agencies on a contingency basis–i.e. fees are charged only on amounts actually collected.")).  But, at the time this suit was filed, EJM owed (and still owes) the underlying debt plus the Fee.  That timing is what matters.  *See Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 524 (6th Cir. 2001) (holding that standing is determined at the time a complaint is filed).  Further, even if EJM prevails in its challenge to the underlying debt, its challenge to the Fee will continue.  (Doc. 87 at 6).  This is so because EJM conceded liability for part of the underlying debt, and it paid that undisputed portion.  (*Id.*).  Because the debt already had been referred to DOT, DOT applied part of the payment to the Fee, rather than the principal.  (*Id.*).  So the Fee already has caused EJM economic harm.

### b.  Traceability

Next, a plaintiff must show "a causal connection" between the injury and the challenged action.  *Garland v. Orlans, PC*, 999 F.3d 432, 440 (6th Cir. 2021) (citing *Lujan*, 504 U.S. at 560) (internal brackets and quotation marks omitted).  Said differently, the injury must be "traceable to the challenged action of the defendant, not some independent action of some third party."  *Id.* at 440–41 (citing *Lujan*, 504 U.S. at 560) (internal brackets and quotation marks omitted).  EJM has demonstrated traceability.  Notably, this requirement is "relatively modest[.]"  *Bennett v. Spear*, 520 U.S. 154, 170–71 (1997) (finding it "not difficult to conclude" the petitioners met their

traceability burden which "at this stage of the litigation" is light). It is undisputed that DOT calculated and issued the Fee applied to EJM's debt.

Still, DOT argues that the harm is not directly traceable to it; rather, it is "directly traceable only to EJM's failure to timely and fully pay the underlying debt . . . and not to any action of the government." (Doc. 84 at 16 (citing *Buchholz*, 946 F.3d 855)). In other words, if EJM had paid its underlying debt, which EJM challenges in part, then the Fee would not have been assessed. So, says DOT, EJM's harm is self-inflicted.[1] But this misses the point. Regardless of the rightness of the underlying fees assessed against EJM, EJM argues that the Fee is illegal. The path of that injury leads directly to DOT and no one else. Further, if this injury is categorized as self-inflicted, it would take the doctrine too far. *See Ciox Health, LLC v. Azar*, 435 F. Supp. 3d 30, 50–51 (D.D.C. 2020) ("Standing doctrine . . . does not require a plaintiff to show that it made no choice that put it at risk of injury; *Ellis v. Comm'r of Internal Revenue Serv.*, 67 F. Supp. 3d 325, 337 (D.D.C. 2014) ("[I]t has been observed that all injuries are in some sense self-inflicted[.]"), *aff'd* 622 F. App'x 2 (D.C. Cir. 2015)."); *Hazardous Waste Treatment Council v. Thomas*, 885 F.2d 918, 935 (D.C. Cir. 1989) (Wald, J. dissenting) ("[T]he notion that voluntary choice can break the causal chain for standing purposes should be read quite narrowly—for surely all judicially cognizable injuries can be traced back to some voluntary action of the plaintiff, even if it is nothing more than the decision to get out of bed in the morning and expose oneself to the risks of modern life. . . . [W]e search for the presence of the fault of another, and so long as the accident was not 'so completely due to the plaintiff's own fault,' we grant standing.").

---

[1] DOT also argues there is no injury-in-fact because EJM's harm is self-inflicted. It says if "EJM paid the underlying debt before USDA referred it to Treasury for collection, there would be indisputably no Treasury fees." (Doc. 84 at 16). But the Sixth Circuit has made clear that such an argument is better addressed in the traceability analysis. *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 866 (6th Cir. 2020) (discussing that while self-inflicted injuries are not even injuries-in-fact, the "real point is that a self-inflicted injury fails the second standing prerequisite, traceability."). The Court follows that directive here.

### c.  Redressability

The third element, redressability, requires a plaintiff to demonstrate that "a favorable decision will relieve a discrete injury to himself." *Parsons v. U.S. Dep't of Just.*, 801 F.3d 701, 715 (6th Cir. 2015).  "Redressability is typically more difficult to establish where the prospective benefit to the plaintiff depends on the actions of independent actors." *Id.*  But when a plaintiff is the object of the challenged government action, "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Lujan*, 504 U.S. at 561–62.

Here, if the Court finds in EJM's favor, it will not have to pay the Fee and its alleged injury will be remedied.  DOT challenges this straightforward application of redressability by arguing that EJM can seek redress only by challenging the underlying debt.  (Doc. 84 at 18).  It is true that if EJM wins its challenge to the underlying debt, part of the Fee will go away.  But, importantly, not all of it.  Because EJM paid the undisputed portion of the underlying debt late; thus, the Fee has been applied to this undisputed debt too.  (Doc. 81, ¶ 106 (alleging that EJM paid USDA the full amount of undisputed underlying debt from 2016 and the Fee is being applied to this undisputed debt)); (*see also* Doc. 87 at 12).  The only avenue for recourse on that portion of the Fee is a judgment against DOT because the underlying debt is undisputed.  Further, EJM could be responsible for all of its challenged underlying debt but still prevail in its challenge to the Fee itself.  Since DOT calculates and issues the Fee, a judgment against DOT is EJM's only recourse.

### 2.       Ripeness

Beyond standing to sue, EJM's claims must be ripe.  Ripeness is a justiciability doctrine used to distinguish between matters that are ready for judicial review and those that are premature "because the injury is speculative and may never occur . . . ." *Nat'l Rifle Ass'n of Am. v. Magaw*,

132 F.3d 272, 280 (6th Cir. 1997).  In the agency context, ripeness is "designed to prevent the courts . . . from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (internal quotation marks and citation omitted).  Ordinarily, an agency action is not considered ripe "until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him."  *Id.* at 808 (internal brackets, quotation marks, and citations omitted).  In other words, an agency action is usually not ripe until it has been enforced.  But, at times, litigants may be permitted to bring pre-enforcement challenges.  Thus, the issue of ripeness most clearly arises "when litigants seek to enjoin the enforcement of statutes, regulations, or policies that have not yet been enforced against them."  *Ammex, Inc. v. Cox*, 351 F.3d 697, 706 (6th Cir. 2003); *see generally*, *Abbott Lab'ys v. Gardner*, 387 U.S. 136 (1967), *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99 (1977); *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158 (1967).

The Court finds that this case is ripe for judicial resolution.  DOT's Fee determination is formalized and being applied to EJM's debt.  (Doc. 81, ¶ 55, ¶ 112–17).  So the Fee's effects are felt in a concrete way.  *Nat'l Park Hosp. Ass'n,* 538 U.S. at 807–08.  And, because DOT has applied the Fee to the debt EJM owes and is seeking to collect, the injury is not speculative.  Currently, EJM owes the underlying debt plus the Fee.  Further, by hearing this case, the Court is not "entangling" itself in "abstract disagreements over administrative policies" or interfering with administrative decision-making prematurely.  *See Nat'l Park Hosp. Ass'n*, 538 U.S. at 807–08.

8

Rather, the Court is addressing a manageable controversy whose factual components have been

"fleshed out" through a concrete and injurious enforcement action. *See id.*

In closer cases, like pre-enforcement challenges, a two-part inquiry is used to determine if

an administrative regulation is ready for review. *Prod. Credit Ass'n of N. Ohio v. Farm Credit*

*Admin.*, 846 F.2d 373, 374 (6th Cir. 1988). In such cases, a court would "determine whether the

issues tendered are appropriate for judicial resolution," and "assess the hardship to the parties if

judicial relief is denied at that stage." *Toilet Goods Ass'n, Inc.*, 387 U.S. at 162, *see also Prod.*

*Credit Ass'n of N. Ohio*, 846 F.2d at 374. To evaluate these two prongs, four factors are examined:

"(1) whether the issues . . . are purely legal; (2) whether the challenged agency action is 'final

agency action' . . .; (3) whether the challenged action would have a direct and immediate impact

on the party bringing suit; and (4) whether immediate resolution would foster . . . effective

enforcement and administration by the agency." *Prod. Credit Ass'n of N. Ohio*, 846 F.2d at 374–

375 (citing *Abbott Lab'ys*, 387 U.S. at 149–154). But since this case is not a pre-enforcement case

(and DOT does not argue it is), the analysis is unnecessary.

Instead, DOT argues that EJM's claims are not ripe because the Fee is "contingent" on the

underlying debt. (Doc. 84 at 19). Contingency that renders a claim not ripe for review is one in

which the claim "rests upon contingent future events that may not occur as anticipated, or indeed

may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). Because EJM might win

its challenge to the underlying debt, DOT says the Fee is contingent and EJM's claims are

premature. (*Id.* at 19–20).

Again, DOT tries to take a doctrine too far. *Texas v. United States* teaches why. In that

case, Texas's legislative scheme to hold public school boards accountable for student achievement

was at issue. Under the scheme, ten possible sanctions could be imposed if a school district failed

9

accreditation criteria. *Id.* at 523. The State of Texas sought a declaratory judgment that the Voting

Rights Act "under no circumstances" would apply to the imposition of two of the sanctions. The

sanctions, however, were never imposed, *id.* at 301, and the State conceded that imposition of the

sanctions was "not currently foreseen or even likely," *id.* at 300. Given the uncertainty, the

Supreme Court decided against using its "powers of imagination," and concluded that operation

of the sanction provisions would be "better grasped when viewed in light of a particular

application." *Id.* at 301. In other words, the challenge was not ripe.

This case is different. DOT already has assessed the Fee against EJM, and it is generally

understood how DOT assesses the Fee. No imagination required. And, as explained above, some

of the Fee is set in stone because EJM paid part of its undisputed underlying debt after it was sent

to DOT for collection. That portion of the Fee will not change without a successful EJM challenge

against DOT. Accordingly, the claims are ripe.

### C.     Failure to State a Claim

DOT additionally asks this Court to dismiss Counts VIII and IX under Rule 12(b)(6) of the

Federal Rules of Civil Procedure. That Rule requires that a complaint "state a claim to relief that

is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp v. Twombly*,

550 U.S. 544, 570 (2007). In reviewing the complaint, a court must construe it in favor of the

plaintiff and accept all well-pleaded factual allegations as true. *Twombly*, 550 U.S. at 570. A

claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

at 678 (citing *Twombly*, 550 U.S. at 556). On the other hand, a complaint that consists of "labels

and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient.

*Twombly*, 550 U.S. at 555; *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011)

10

(noting that a plaintiff must give specific, well-pleaded facts, not just conclusory allegations).  Said differently, "detailed factual allegations" are not required under Fed. R. Civ. P. 8(a)(2)'s "short and plain statement" rule, but the law "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 677–78 (quotation marks and citations omitted).

In the Second Amended Complaint, EJM claims that the Fee is invalid under the APA. (Doc. 81, ¶¶ 111–35).  In Count VIII, EJM asserts that DOT's determination of the Fee is a rule that requires the notice and comment process.  (Doc. 81, ¶ 120).  Since DOT did not engage in the required procedure, EJM says that the action was arbitrary and capricious.  (Doc. 81, ¶ 123).  In addition, EJM appears to assert that DOT's fact finding is arbitrary and capricious because it is not supported by substantial evidence.  (Doc. 81, ¶123–24).  And, in Count IX, EJM asserts that since the Fee cannot be relied upon, and DOT has no other basis for the fee, DOT's demand for the Fee is invalid.  (Doc. 81, ¶ 133–34).

DOT argues that Counts VIII and IX must be dismissed for failure to state a claim because the Fee "is not a legislative rule subject to notice and comment rulemaking."  (Doc. 84 at 21). More specifically, DOT says that the Technical Service Bulletin, which announces the Fee, is not a legislative rule subject to notice and comment rulemaking, therefore, EJM's claims that the process was invalid under the APA are inapplicable.  In response, EJM unsurprisingly casts the Fee as a legislative rule.  (Doc. 87 at 26–28).

The parties' disagreement matters because legislative rulemaking requires notice and comment, *see* 5 U.S.C. § 553(b)–(d), while rule interpreting does not.  And yet, the line between legislative rules and interpretive rules is notoriously difficult to draw.  *See, e.g., Friedrich v. Sec'y of Health & Hum. Servs.*, 894 F.2d 829, 834 (6th Cir. 1990) (quoting *General Motors Corp. v.*

*Ruckelshaus*, 742 F.2d 1561, 1565 (D.C.Cir.1984)) ("We have discovered no bright line that separates the two types of rules. . . . [T]he distinction between the two types of rules is 'enshrouded in considerable smog.'"); *Hoctor v. U.S. Dep't of Agric.*, 82 F.3d 165, 167 (7th Cir. 1996) ("Distinguishing between a 'legislative' rule, to which the notice and comment provisions of the Act apply, and an interpretive rule, to which these provisions do not apply, is often very difficult . . . ."); *CIC Servs., LLC v. Internal Revenue Serv., Dep't of Treasury*, No. 3:17-CV-110, 2021 WL 4481008, at *4 (E.D. Tenn. Sept. 21, 2021) (citing *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015)) ("The Supreme Court recently acknowledged that the precise meaning of the term interpretive rule is the 'source of much scholarly and judicial debate.'").

Despite this "considerable smog," the Sixth Circuit has provided some guidance. Because "legislative rules have the force and effect of law, and interpretive rules do not[,]" "a rule that intends to create new law, rights or duties is legislative, while a rule that simply states what the administrative agency thinks the statute means, and only reminds affected parties of existing duties is interpretive." *Tennessee Hosp. Ass'n v. Azar*, 908 F.3d 1029, 1042 (6th Cir. 2018) (citing *Perez*, 575 U.S. at 96; *Chrysler Corp. v. Brown*, 441 U.S. 281, 302–03 (1979); *Michigan v. Thomas*, 805 F.2d 176, 182–83 (6th Cir. 1986); *Gen. Motors Corp.*, 742 F.2d at 1565).

Legislative rules are agency action in which the agency "intends to create new law, rights or duties." *Friedrich*, 894 F.2d at 834 (citing *General Motors Corp.*, 742 F.2d at 1565). And when "an agency acts pursuant to an express delegation that directs the agency to issue regulations or set permissible standards, the resulting rule is generally (although not universally) considered to be legislative." *Tennessee Hosp. Ass'n*, 908 F.3d at 1043. So, "the making of reasonable but arbitrary (not in the 'arbitrary or capricious' sense) rules that are consistent with the statute or regulation under which the rules are promulgated but not derived from it, because they represent

an arbitrary choice among methods of implementation," are legislative rules.  *Hoctor*, 82 F.3d at 170.  "A rule that turns on a number is likely to be arbitrary in this sense."  *Id.*  "When agencies base rules on arbitrary choices they are legislating, and so these rules are legislative . . . and require notice and comment rulemaking."  *Id.* at 170–71.

On the other hand, interpretive rules "simply state[] what the administrative agency thinks the statute means, and only reminds affected parties of existing duties."  *Tennessee Hosp. Ass'n*, 908 F.3d at 1042.  These rules "derive a proposition from an existing document whose meaning compels or logically justifies the proposition."  *Mendoza v. Perez*, 754 F.3d 1002, 1021 (D.C. Cir. 2014) (internal citation omitted).  Still, interpretive rules can do more than just "dr[aw] crisper and more detailed lines than the authority being interpreted," or "parrot[] the rule[,] or replac[e] the original vagueness with another."  *POET Biorefining, LLC v. Env't Prot. Agency*, 970 F.3d 392, 408 (D.C. Cir. 2020).  If "fairly drawn from the underlying statute," interpretive rules "may articulate even relatively detailed legal obligations . . . ."  *Id.*

At this stage of the case, however, EJM's position that DOT's actions amount to legislative rulemaking only needs to be plausible.  *See Mann Constr., Inc. v. Internal Revenue Serv.*, 495 F. Supp. 3d 556, 576 (E.D. Mich. 2020), *reconsideration denied*, No. 20-11307, 2020 WL 6544828 (E.D. Mich. Nov. 6, 2020); *Am. Farm Bureau v. U.S. E.P.A.*, 121 F. Supp. 2d 84, 105–06 (D.D.C. 2000); *Jafarzadeh v. Nielsen*, 321 F. Supp. 3d 19, 46 (D.D.C. 2018) (finding that the plaintiffs plausibly alleged that the U.S. Citizenship and Immigration Services' Controlled Application Review and Resolution Program is a legislative rule requiring notice and comment because it goes "beyond mere guidance"); *Emami v. Nielsen*, 465 F. Supp. 3d 991, 996 (N.D. Cal. 2020) (finding that the plaintiffs "plausibly alleged for 12(b)(6) purposes" that the U.S. State Department's

implementation of a waiver provision regarding a waiver program that would allow exceptions for entry into the United States violated the APA's notice and comment requirements).

A case from the United States District Court for the District of Columbia, *American Farm Bureau v. U.S. E.P.A.*, is instructive.  There, the organizational plaintiffs alleged that the EPA's practice of implementing policies setting pesticide tolerances was a legislative rule that was not adopted pursuant to notice and comment requirements, 121 F. Supp. 2d at 105.  The Court found that "[w]hile it is entirely possible, if not likely, that EPA could prove, after discovery, that its science policies . . . are not binding rules," at the 12(b)(6) stage, the plaintiffs had met their burden. The court came to this conclusion because plaintiffs "set forth the necessary elements of a claim for failure to provide notice and comment rule-making under the APA" by alleging that in practice EPA has treated these policies as final rules that have a binding present and future effect on the regulated industry.  *Id.* at 104–06.

The court in *Mann Construction Inc. v. Internal Revenue Service* came to a similar conclusion.  In that case, the plaintiffs challenged an Internal Revenue Service Notice that notified taxpayers of their duty to report participation in certain transactions and laid out that persons who fail to report, when required to do so, may be subject to a penalty.  *Id.* at 566–68.  The Court said, "the Notice changes taxpayers' rights and obligations.  And the duty created is not inconsequential. Taxpayers who fail to comply are subject to substantial penalties."  *Id.* at 575.  Thus, the plaintiffs had "plausibly alleged that the Notice is a legislative rule that should be set aside for failure to comply with notice and comment."  *Id.* at 576.  These and other cases illustrate the relatively low bar at the pleadings stage.  Indeed, alleging that a rule is in fact legislative can be as simple as asserting that agency action imposed a new legal obligation on a plaintiff.

14

EJM has done that here.  Taking EJM's pleading as true, the Fee applied by DOT imposes

a new duty on EJM—it now must pay a debt on top of the original underlying debt.  Since the new

duty imposed by the Fee makes it at least plausible that the Fee is a legislative rule, and because

DOT failed to undertake notice and comment rulemaking, it is likewise plausible that the Fee is

arbitrary and capricious.  It follows that EJM has stated a claim in Counts VIII and IX.

### D.    Bifurcation

Finally, and alternatively, DOT requests "that the claims against [it] be severed and stayed

pending the resolution of the substantive, underlying claims against USDA and CBP."  (Doc 84 at

31).  DOT says that because the claims against it are contingent on a finding that the debt owed to

USDA is valid, the USDA issue should be resolved first.  (*Id.*).  EJM disagrees.  (Doc. 87 at 6).

EJM has conceded that it owed part of the underlying USDA debt, and it paid that undisputed

portion.  (*Id.*).  As noted, part of the payment was applied to the Fee, rather than the principal.

(*Id.*).  That left part of the principal unpaid.  If the Fee is proper, interest is accruing on the

undisputed portion EJM still owes.  (*Id.*)  Delaying adjudication, EJM argues, potentially allows

more interest to accrue which "would be unjustified."  (*Id.*at 7).

In briefing this request, DOT asks the Court to sever the claim against it, citing to Rule 21.

(Docs. 84 at 31, 90 at 4).  But Rule 21 is not applicable in this case because neither DOT, nor EJM,

has alleged misjoinder.  Rule 42 of the Federal Rule of Civil Procedure is a better fit for what DOT

requests.  It allows the Court, in its discretion, to bifurcate claims.  In relevant part, it states: "For

convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial

of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."  Fed. R.

Civ. P. 42(b); *see also Hoskins v. Liberty Mut. Grp., Inc.*, No. 2:19-CV-5441, 2020 WL 7201111,

at *2 (S.D. Ohio Dec. 4, 2020) ("A district court may, within its discretion, bifurcate a trial in

furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy."). The moving party "bears the burden of demonstrating that concerns for judicial economy and prejudice weigh in favor of granting the motion." *Rose v. State Farm Fire & Cas. Co.*, No. 2:10-CV-874, 2011 WL 13233163, at *2 (S.D. Ohio Mar. 28, 2011). Ultimately, the "decision to grant or deny bifurcation is left to the sound discretion of the trial court." *Id.* (citing *Saxio v. Titan-C-Mtg, Inc.*, 86 F.3d 553, 556 (6th Cir. 1996)).

When exercising discretion, the Court should consider "the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy." *Id.* (quoting *Wilson v. Morgan*, 477 F.3d 326, 329 (6th Cir. 2007)); *see also Papineau v. Brake Supply Co., Inc.*, No. 4:18-CV-00168-JHM, 2021 WL 1881650, at *3 (W.D. Ky. Apr. 2, 2021). It is noted that disputes are typically resolved in a single proceeding, so bifurcation is an exception to this general rule. *Rose*, 2011 WL 13233163, at *1, *see also Shah v. Metro. Life Ins. Co.*, No. 2:16-CV-1124, 2017 WL 3288185, at *1 (S.D. Ohio Aug. 2, 2017). And "[f]ederal courts have long adhered to the rule that bifurcation should be ordered only in exceptional cases. . . ." *Rose*, 2011 WL 13233163, at *2 (quoting Wright & Miller, Federal Practice and Procedure § 2388, at 474 (2d Ed. 1999)).

The Court declines to take the exceptional step of bifurcation here. It serves judicial economy and convenience to address the claims in this case together. DOT contends that the issue is novel and complex, and may be mooted by the decision regarding the underlying debt. (Doc. 90 at 4). Yet, the Court is capable of addressing the claims against DOT effectively and efficiently while considering the remainder of the case. And the mootness issue does not necessarily warrant bifurcation. *See 4 West, LLC v. Auto-Owners (Mut.) Ins. Co.*, No. 3:20-CV-01, 2021 WL 81748, at *2 (S.D. Ohio Jan. 11, 2021) (stating that the bad faith claim will not be bifurcated just because

16

the plaintiff must succeed on either its breach of contract or declaratory judgment claim for the bad faith claim to not be moot); *Wolkosky v. 21st Century Centennial Ins. Co.*, No. 2:10-CV-439, 2010 WL 2788676, at \*5 (S.D. Ohio July 14, 2010) ("However, a defendant may not ground its bifurcation argument on the mere possibility that resolution of the breach of contract issue may preclude the plaintiff's bad faith claim."). Additionally, EJM contends that bifurcating would cause it harm. In short, EJM says that if the Fee is proper, it needs to know sooner rather than later because interest is accruing on the undisputed portion of the underlying debt. (Doc. 87 at 6). Notably, DOT fails to address the prejudice alleged by EJM should the case be bifurcated and instead attempts to shift the burden to EJM. (*See* Doc. 90 at 5 ("Indeed, Plaintiffs make no meaningful argument against a stay or severance, addressing those procedural possibilities only in passing and with no citation to authority or the record.")). So, in its discretion, the Court finds that bifurcation is not warranted here.

**III.     CONCLUSION**

For the foregoing reasons, DOT's Motion (Doc. 84) is **DENIED**.

IT IS SO ORDERED.

Date: January 13, 2022                                           /s/ Kimberly A. Jolson
                                                                                        KIMBERLY A. JOLSON
                                                                                        UNITED STATES MAGISTRATE JUDGE